Upon review of the competent evidence of record with respect to the errors assigned, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, modifies and affirms the Decision and Order of the Deputy Commissioner.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. In June 1994, plaintiff was incarcerated by defendant in Pender County. After lifting weights and performing "neck presses" in late May or early June 1994, plaintiff began experiencing neck and back pain. Plaintiff's symptoms were treated by Dr. Dees, who examined plaintiff and prescribed medications. In addition to his neck and back pain, plaintiff began experiencing numbness and tingling in his hands. He was also dragging his right leg. Plaintiff sought additional medical treatment, but was informed that there was no additional treatment Dr. Dees could provide to him. As a result, plaintiff filed a grievance. Before plaintiff's grievance could be heard, he was released from prison. Plaintiff was released from prison on 29 June 1994.
2. After being released from prison, plaintiff was examined by Dr. Grisby, who ordered x-rays and prescribed medications. On 17 September 1994, plaintiff was arrested on outstanding warrants and placed in the Pender County jail. While in jail, plaintiff made sick call requests seeking to be examined by Dr. Dees. Plaintiff was not examined by Dr. Dees, but he was taken to the Pender Memorial Hospital emergency room where he was examined by Dr. Senholtz, who prescribed plaintiff the same medications that Dr. Grisby had prescribed.
3. Thereafter, plaintiff was transferred to Central Prison. At Central Prison, plaintiff was examined by a physician who ordered a lumbar x-ray and prescribed medications. The x-ray was negative.
4. Prior to 6 January 1995, defendant was preparing for the execution of a death row inmate. As part of these preparations, defendant moved its "safekeeping" inmates to other correctional facilities. Plaintiff was transferred, along with other inmates, to Odom Correctional Center. The inmates were transferred by bus. The inmates were placed in leg irons and handcuffs which were attached to a waist chain. As plaintiff was exiting the bus he fell. A correctional officer assisted plaintiff to his feet. He then entered the facility where a scrape on his arm was cleaned by one of the nurses who were receiving the "safekeeping" inmates. Plaintiff was not examined by a physician while he was in Odom Correctional Center.
5. Thereafter, plaintiff was transferred back to the correctional facility in Pender County where he remained for approximately two weeks before he was transferred to a correctional facility in Troy, North Carolina. When he arrived at the Troy correctional facility, he advised the receiving correctional officers that he needed to see a physician. Plaintiff was later examined by Dr. Davenport, who had the benefit of reviewing plaintiff's prior medical records. Dr. Davenport prescribed medications.
6. Plaintiff was first examined by Dr. Broyles in March 1995. Dr. Broyles advised plaintiff that he had arthritis.
7. On 6 April 1995, plaintiff was transferred back to the Pender County correctional center. Upon arriving at that facility, plaintiff informed the receiving officers that he was supposed to have a bottom bunk due to his neck and back condition. Plaintiff was initially provided with a bottom bunk. However, at approximately 10:00 p.m., plaintiff was informed by an employee of defendant that no order for a bottom bunk could be located in plaintiff's records. Plaintiff then prepared a grievance.
8. On 10 April 1995, plaintiff was examined by Dr. Dees. The results of plaintiff's back evaluation were essentially normal. Dr. Dees prescribed Ibuprofen and advised plaintiff that his condition did not require him to be provided with a bottom bunk. Plaintiff then filed another grievance. Plaintiff was next examined by Dr. Dees on 25 May 1995. Dr. Dees continued plaintiff's prescription for Ibuprofen or Tylenol.
9. A cervical x-ray taken on 26 June 1995 revealed that plaintiff had osteoarthritis that was causing narrowing of his C5 and C6 disc spaces.
10. Thereafter, plaintiff was transferred to Oklahoma for approximately one year. Plaintiff was later returned to North Carolina and was housed in Randolph Correctional Facility, where he remained at the time of the hearing. On 27 January 1997, plaintiff had a cervical x-ray which revealed C5-C6 disc disease, without encroachment.
11. A cervical MRI performed on 20 July 1997 revealed that plaintiff had degenerative disc disease at C5-C6, with stenosis. However, he had normal spinal canal and cord morphology.
12. The evidence of record is insufficient to prove by its greater weight that plaintiff has a herniated disc or that the medical treatment provided to plaintiff by Drs. Dees, Davenport and Broyles failed to comply with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar community. Accordingly, the treatment received by plaintiff by the above physicians was not negligent.
13. At the time of the hearing before the Deputy Commissioner plaintiff alleged in cases TA-14277 and TA-14278 that he was damaged by the negligence of "John Doe and Others — Correctional Officers". The Deputy found in these two cases that as a result of plaintiff's failure to name specific employees, "the evidence of record was insufficient to prove by its greater weight which correctional officers plaintiff alleged were negligent." Approximately six months after the filing of the Deputy Commissioner's Opinion and Award plaintiff sought to amend the Affidavits in these claims to name specific employees of defendant.
14. There was no negligence by either defendant or its employees in the treatment and care of plaintiff.
 ***********
The foregoing findings of fact and conclusions of law engender the following additional:
 CONCLUSIONS OF LAW
1. In the exercise of its discretion, the Full Commission concludes that plaintiff's attempt to amend his Affidavits in cases TA-14277 and TA-14278 to include the names of specific employees of defendant who were negligent is untimely. N.C. Gen. Stat. §§ 143-297 and 1A-1, Rule 15(a); Mason v. NorthCarolina State Hwy. Comm'n, 273 N.C. 36, 159 S.E.2d 574
(1968). Accordingly, the evidence in these two cases is insufficient to prove by its greater weight which correctional officers plaintiff alleged were negligent.
2. In the remaining cases, defendant's named employees breached no duty of care owed to plaintiff, and therefore were not negligent in the treatment and care of plaintiff.
3. Plaintiff has sustained no damages as a result of negligence by any employee of defendant.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 ORDER
1. Under the law, plaintiff's claims must be, and the same are hereby, DISMISSED.
2. Each party shall bear its own costs.
 S/ _______________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
RCR:jbd